STATE of Missouri, Respondent,

v.

**Ennice R. ROSS, Appellant.**

No. WD 49759.

Missouri Court of Appeals,
Western District.

March 5, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 1996.

Application to Transfer Denied
June 25, 1996.

James C. Cox, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David R. Truman, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, C.J., P.J., and LOWENSTEIN and BRECKENRIDGE, JJ.

FENNER, Chief Judge.

Ennice Ross was convicted following a jury trial of voluntary manslaughter, § 565.023, RSMo 1994, assault in the first degree with serious physical injury, § 565.050, RSMo 1994, and two counts of armed criminal action, § 571.015, RSMo 1994. He was sentenced to concurrent terms of fifteen years imprisonment for manslaughter, fifteen years imprisonment for assault, and ten years imprisonment for the armed criminal action counts. This appeal followed. The judgments of conviction are affirmed.

On the evening of July 19, 1993, Ross and a friend, Tom Turner, went to the area of 50th and Woodland in Kansas City, Missouri, where they attempted to join a dice game.

An argument between Turner and another player, Marcus Washington, began over whose turn it was to shoot the dice. The two men started to push and shove each other, and Washington hit Turner in the face. Washington's brother, Orlando, attempted to break up the fight, but the fight moved into the street.

Turner then pulled a derringer from his pocket and pointed it at Marcus Washington. Orlando Washington crept behind Turner and grabbed him. The men struggled for control of the handgun. Meanwhile, Ross pulled a .45 caliber handgun and fired four shots toward the men. One bullet hit Orlando Washington dropping him immediately to the ground. Marcus Washington was shot twice. The fourth bullet apparently did not hit anybody. Ross and Turner then fled.

Orlando Washington died as a result of his gunshot wound. Marcus Washington was treated at Menorah Medical Center for gunshot wounds to his right forearm and to his upper chest. He spent the evening in the intensive care unit and was released the next morning. He identified the photographs of Ross and Turner for police detectives.

On August 12, 1993, the police arrested Ross. After waiving his *Miranda* rights, Ross made a statement to the detectives regarding the shooting incident. The statement was videotaped and played for the jury.

Ross testified in his own defense. He admitted shooting the two men, but claimed he had done so in self-defense.

In his first point on appeal, Ross claims that the trial court plainly erred in allowing the jury to view the entire videotaped statement. He argues that his statements regarding his use of marijuana and PCP prior to the shooting constituted inadmissible evidence of other crimes.

In a pretrial motion to suppress, Ross challenged the admission of the videotaped statement on the grounds that it was cumulative. He, however, failed to object, based on inadmissible evidence of other crimes, to the portion of the statement regarding his *drug* use. *Errors raised for the first time on appeal are reviewed under the plain error standard. State v. Gray,* 887 S.W.2d 369, 387 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). Relief is granted under plain error review only when the alleged error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice results if uncorrected. *Id.*

Generally, evidence of other, uncharged crimes is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. *State v. Harris,* 870 S.W.2d 798, 810 (Mo. banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). Exceptions to the general rule provide for the admission of evidence of other crimes if it tends to establish motive, intent, identity, the absence of mistake or accident, or a common scheme or plan. *Id.* Evidence of other crimes is also admissible if it is part of the circumstances or the sequence of events surrounding the offense charged. *Id.* "This evidence is admissible to present a complete and coherent picture of the events that transpired." *Id.* The evidence, however, must be logically relevant (*i.e.,* it must tend to establish guilt for the crime) and legally relevant (*i.e.,* its probative value must outweigh its prejudicial effect) to be admissible under any exception. *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993); *State v. Coutee,* 879 S.W.2d 762, 767 (Mo.App.1994). The trial court is in the best position to balance the probative value and prejudicial effect of the evidence. *Id.*

In his videotaped statement, Ross admitted that he had smoked marijuana laced with PCP prior to the shootings. This evidence served to provide a complete and coherent picture of the events leading up to the crime charged. Furthermore, in light of Ross' admissions that he shot the victims, he was not prejudiced by the admission of evidence that he used drugs prior to the shooting. The trial court did not plainly error in allowing the jury to view the entire videotaped statement. Point denied.

Ross claims in his second point that there was insufficient evidence to convict him of the class A felony of assault in the first degree in the shooting of Marcus Washington. He argues that the State failed to

present evidence that Washington suffered serious physical injury.

In reviewing a challenge to the sufficiency of the evidence, an appellate court's review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). The court views all of the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the prosecution and disregards all evidence and inferences to the contrary. *Id.*

Section 565.050 provides:

1. A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person.

2. Assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony. § 565.050, RSMo 1994. Serious physical injury is defined in section 565.002(6) as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 565.002(6), RSMo 1994. Proof that a deadly weapon was fired at the victim, wounding him, is sufficient evidence of the class B felony of assault in the first degree. *State v. Nguyen*, 880 S.W.2d 627, 635 (Mo.App.1994). To raise the offense from a class B felony to a class A felony, however, there must be additional proof that the victim suffered serious physical injury. *Id.* The victim's testimony with respect to the extent of his injuries may be sufficient to prove the elements of the State's case. *State v. Trimmer*, 849 S.W.2d 725, 727 (Mo.App.1993).

Ross relies on *State v. Nguyen* to argue that there was insufficient evidence to establish that Marcus Washington's injuries were life threatening. Like *Nguyen*, in the case at bar, no medical testimony was presented to establish the victim's condition. In this case, the victim's testimony was the only evidence offered by the State regarding the extent and seriousness of his wounds. Marcus Washington testified that he was shot in the right forearm and in the chest. He indicated to the jury the location of the bullet wounds. He testified that Ross shot him with a .45 caliber weapon and that one bullet entered his chest and exited under his arm-pit. Washington testified that he was hospitalized overnight in the intensive care unit of Menorah Medical Center. In *Nguyen*, the victim was shot in the hip, rather than the chest, and the record does not reflect that he was admitted to the hospital as a result of his wound.

We believe that the case at bar is distinguishable from *Nguyen*. The record here is sufficient to establish that Marcus Washington's injuries were life threatening. Considered in the light most favorable to the verdict, Washington suffered more than a flesh wound. The bullet actually entered Washington's chest and medical testimony is not required to establish that being shot in the chest with a .45 caliber weapon, causing hospitalization in intensive care, is life threatening.

Ross' second point is denied.

The judgments are affirmed.

All Concur.