**STATE of Missouri, Respondent,**

v.

**Yntell DULEY, Appellant.**

**No. WD 65088.**

Missouri Court of Appeals,
Western District.

April 24, 2007.

Ellen H. Flottman, State Public Defender Office, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Robert J. (Jeff) Bartholomew, Office of Attorney General, Jefferson City, for respondent.

PAUL M. SPINDEN, Judge.

Yntell Duley appeals the circuit court's judgment convicting him of murder in the second degree, unlawful use of a weapon, three counts of assault in the first degree, and four counts of armed criminal action. He complains that the state did not present sufficient evidence to support the jury's verdicts and that the circuit court erred in overruling his motion for a mistrial after a juror expressed concern about working in the vicinity of Duley's house during the trial. We affirm the circuit court's judgment.

The convictions resulted from a shooting at a party in a Kansas City banquet hall on November 23, 2002. Duley attended the party along with 350 to 400 other people. One person was killed in the shooting, and several others were injured. After shots were fired inside the hall, witnesses reported that more gunshots were fired outside, but no one saw who fired the shots outside.

Six of the party-attenders told investigating police officers that they saw Duley shoot a gun at the party. Police investigators found two shell casings inside the hall. Markings on the shells indicated that the same gun had fired both of them. Investigators found five shell casings outside the. hall, and shell markings indicated that the same gun had fired those five shells. Shell markings indicated, however, that different guns had fired the shells found inside the hall and those found outside. Police investigators found four shell casings in Duley's house, and markings on those casings indicated that they had been shot from the same gun that fired the shells found outside the hall. Investigators did not find the guns that fired any of the shells.

■ In his first point, Duley argues that the circuit court erred in overruling his motions for judgment of acquittal because the state did not present sufficient evidence to support the jury's verdicts. He asserts that, because his convictions were based on only eyewitnesses' prior inconsistent statements without sufficient corroborating evidence, the state's evidence was inherently suspect and fell short of what due process of law requires to support a criminal conviction. The prosecuting attorney's case relied principally on the prior inconsistent statements of the six individuals who had told police that they had seen Duley fire a gun inside the hall. All six recanted the statements for various reasons, including claims that officers had coerced the statements. Pursuant to Section 491.074, RSMo 2000,[1] the prosecuting

---

1. Section 491.074 says, "Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of a criminal offense shall be received as substantive evidence, and

attorney presented the six witnesses' prior inconsistent statements as substantive evidence.

In reviewing a claim that the state's evidence was insufficient, we deem as true all of the evidence that supported the jury's verdicts and disregard the remaining evidence. If the evidence supporting the jury's verdicts makes a *prima facie* case, we must affirm the circuit court's judgment. *State v. Crawford*, 68 S.W.3d 406, 407–08 (Mo. banc 2002).

As support for his contention that a conviction cannot be based solely on prior inconsistent statements—even those of six eyewitnesses—Duley cites *State v. Pierce*, 906 S.W.2d 729 (Mo.App.1995). The *Pierce* court held that, without corroborating evidence, a prosecutrix's prior inconsistent statement alone could not constitute sufficient evidence to support a guilty verdict in a sexual assault case. *Id.* at 735. The court explained, "The jury . . . should not have been merely free to decide which time [the prosecutrix] was telling the truth, without the benefit of corroborating evidence." *Id.*

The rule enunciated in *Pierce* is "an exception to the rule that a prior inconsistent statement can serve as the sole basis for a finding of guilt[.]" *State v. Garner*, 14 S.W.3d 67, 72 (Mo.App.1999). Application of the rule set out in *Pierce* has been restricted to its "unique factual situation." *State v. Hayes*, 169 S.W.3d 613, 622 (Mo. App.2005). Indeed, "[t]he trend in Missouri has been to limit the application of the corroboration rule [enunciated in *Pierce*] to the victim's trial testimony." *State v. Griggs*, 999 S.W.2d 235, 241 (Mo. App.1998).

Unlike the situation in *Pierce*, Duley's conviction did not rest only on the victim's single prior inconsistent statement. The jury heard the prior inconsistent statements of six witnesses who all said that they had seen Duley shoot a gun at the party. Moreover, even if the *Pierce* rule did apply to this case, the prior inconsistent statements of each of the six witnesses strengthened and rendered more probable the truth of the others' prior inconsistent statements, hence corroborating the others' prior inconsistent statements. Hence, we reject Duley's first point.

■ In his second point, Duley alleges that the circuit court erred in overruling his motions for judgment of acquittal for the Class A felony of assault in the first degree of Freddy Ersery. Duley asserts that the evidence was insufficient to support Class A felony assault because the state did not establish that Ersery suffered serious physical injury.

Ersery testified that a "bullet went straight through and came out . . . [his] neck." Hospital personnel admitted Ersery overnight for treatment of the wound. Ersery showed the scars of his wounds to the jury, and the jury saw pictures of the wounds taken on the night of the shooting.

Section 565.050.1, RSMo 2000, says, "A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." When a defendant actually causes serious physical injury, the first-degree assault is a Class A felony. Otherwise, it is a Class B felony. Section 565.050.2, RSMo 2000. Section 565.002(6), RSMo 2000, declares that a physical injury is "serious" when the injury "creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body[.]" The courts have declared that " 'substantial risk' is

the party offering the prior inconsistent state-      ment may argue the truth of such statement."

less than a likelihood or a probability. It is only a 'risk.' The modifier 'substantial' eliminates those injuries which might in some instances cause death, yet the risk thereof is less than substantial." *State v. Ellis,* 639 S.W.2d 420, 422 (Mo.App.1982).

A gunshot wound inflicted at relatively close range in which the bullet enters and passes through the victim's neck constitutes a serious physical injury that creates a substantial risk of death. The circuit court did not err in rejecting Duley's contention.

Duley's reliance on *State v. Nguyen,* 880 S.W.2d 627 (Mo.App.1994) *overruled on other grounds by State v. Driver,* 912 S.W.2d 52, 55 (Mo. banc 1995), is misplaced. In that case, the court held that the state had not established that a gunshot wound to a hip was a Class A felony because the state did not present sufficient evidence that the injury created a substantial risk of death. *Id.* at 636. In *State v. Ross,* 923 S.W.2d 354, 357 (Mo.App.1996), this court distinguished *Nguyen:*

> Like *Nguyen,* in the case at bar, no medical testimony was presented to establish the victim's condition. In this case, the victim's testimony was the only evidence offered by the State regarding the extent and seriousness of his wounds. [The victim] testified that he was shot in the right forearm and in the chest. He indicated to the jury the location of the bullet wounds. He testified that [the defendant] shot him with a .45 caliber weapon and that one bullet entered his chest and exited under his armpit. [The victim] testified that he was hospitalized overnight in the [hospital's] intensive care unit[.] In *Nguyen,* the victim was shot in the hip, rather than the chest, and the record does not reflect that he was admitted to the hospital as a result of his wound.

Duley's case bears more similarities to the situation in *Ross* than that of *Nguyen.* The circuit court did not err in overruling Duley's motions for judgment of acquittal and in sentencing him for assault in the first degree.

█ In his third point, Duley charges the circuit court with abusing its discretion in overruling his request for a mistrial after a juror let it be known that he had requested the circuit court judge to ask his employer to excuse him from reporting to his work site because it was close to the defendant's residence. Duley argues that the ruling violated his rights to due process and a fair trial because at least two jurors thought that the juror was afraid of Duley. Duley asserts that the incident, linked to comments by the prosecuting attorney during his opening statement, rendered the trial unfair. During his opening statement, apparently to prepare the jury for his needing to use the prior inconsistent statements, the prosecuting attorney noted Duley's statement to the police, "I bet [the individuals who identified me] don't make it to court to testify or point their finger at me and say it was me."

█ Only extraordinary circumstances will support the drastic remedy of granting a mistrial. *State ex rel. Kemper v. Vincent,* 191 S.W.3d 45, 49 (Mo. banc 2006). We review a circuit court's decision whether or not to grant a mistrial for an abuse of discretion. *Id.*

The juror explained that his reason for wanting to avoid working near Duley's house was not fear, but to avoid potential contact with people involved in the case. Duley contends, however, that the other jurors could have concluded that the juror made the request out of fear. We dismiss the contention. The circuit court spoke with each of the jurors in chambers. According to Duley, eight of the jurors heard

the juror make the comment about going to the job site. Most of them thought that his reason was to avoid doing anything that would hurt the case or would be inappropriate. An alternate juror, who was discharged without participating in the deliberation, and another juror told the circuit court that they thought that fear had motivated the request. Both assured the circuit court, however, that the incident did not affect their ability to consider the evidence fairly and impartially or to follow the circuit court's instructions.

We do not discern that any misconduct occurred. The circuit court did not abuse its discretion in denying Duley's request for a mistrial.

We affirm the circuit court's judgment.

VICTOR C. HOWARD, Chief Judge, and ROBERT G. ULRICH, Judge, concur.