**Richard BUCHLI II, Respondent,**

v.

**STATE of Missouri, Appellant.**

**No. WD 67269.**

Missouri Court of Appeals, Western District.

Nov. 13, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 18, 2007.

Application for Transfer to Denied Jan. 22, 2008.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun Mackelprang, Victor J. Melenbrink, Office of Atty. Gen., Jefferson City, for Appellant.

Robert Gould, Richard Wayne Johnson, Kansas City, for Respondent.

PAUL M. SPINDEN, Judge.

The State appeals the circuit court's judgment to grant the post-conviction motion of Richard Buchli II. In his motion, filed pursuant to Rule 29.15, Buchli asked the circuit court to vacate the judgment and sentence of his conviction for first-degree murder and armed criminal action. He alleged that the State failed to disclose numerous pieces of exculpatory evidence in violation of constitutional guarantees recognized by the United States Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The motion also alleged numerous claims of ineffective assistance of counsel. In granting his amended motion, the circuit court concluded that the State was guilty of two separate *Brady* violations and found six bases for declaring that Buchli's trial attorney's representation had been ineffective. Any one of these eight reasons would be sufficient to grant Buchli a new trial. Because we conclude that the circuit court did not err in granting Buchli's motion on the basis that the State did not disclose Exhibit 134, a video tape that contained exculpatory evidence, we affirm the circuit court's judgment without reaching the other seven points.

■ Before considering the merits of the State's claim, we consider Buchli's request to dismiss the State's brief on the ground that it did not comply with Rule 84.04(c). Buchli complains that, contrary to the rule's requirement of "a fair and concise statement of the facts," the State's statement of facts did not go into sufficient enough detail regarding the hearing of his Rule 29.15 motion. We disagree. The State's statement of fact was sufficient to provide us with an immediate, complete and unbiased account of the facts of the case. We, therefore, deny Buchli's request.

A jury convicted Buchli of first-degree murder and armed criminal action in connection with the May 5, 2000, beating death of Richard Armitage, Buchli's law practice partner. We set out the details of the incident in *State v. Buchli*, 152 S.W.3d 289 (Mo.App.2004), and, therefore, state only the facts relevant to Buchli's *Brady* challenge. We note, however, one discrepancy in our previous recitation of facts. In our earlier opinion, we said that telephone records indicated that Armitage was engaged in a telephone conversation immediately before his death from 1:42 P.M. until 2:01 P.M. In this appeal, the State and Buchli agree that telephone records established that he was on the phone for a minute longer—until 2:02:05 P.M. The amount of time that Armitage was on the telephone was crucial in this case because other evidence established that Buchli left the building at some time between 2:06 to 2:10 P.M. As Buchli argued in his direct appeal:

> Mr. Buchli [would have] had only four to nine minutes to beat his law partner nine times, ensure that there was no

blood on his clothing, secrete the murder weapon in his briefcase (as argued by the state) without getting blood inside the briefcase ..., compose himself well enough to ride down [from the thirteenth floor] on the elevator, where he might meet other tenants of the building, casually walk through the parking lot to his Jeep, and then drive away without arousing suspicion.

*Buchli,* 152 S.W.3d at 296–97.

In this appeal Buchli complains that, before trial, the State did not disclose Exhibit 134. This exhibit was a building surveillance video tape made on the day of the murder between 6:49 A.M. to 5:39:50 P.M. The State did turn over a portion of the tape: the recording from 1:13 P.M. to 2:39 P.M.

At trial, the State had used the video tape's time stamp to try to expand the window of opportunity that Buchli had to commit the crime and to leave the scene. The State called as a witness Paul Hoglen, the building's engineer, who testified that he saw Buchli leave the building at 2:10 P.M. The State also called Detective Mark Woods who testified that, on May 17, 2000, 12 days after the murder, the time stamp on the recording device was three minutes behind the time indicated on his pager. The State also introduced the dispatch sheets from Metropolitan Ambulance Services Trust (MAST) on which were recorded the time when emergency personnel entered the building in response to emergency calls concerning Armitage. The MAST time varied three to four minutes from the time stamp on the surveillance video.

Buchli filed a Rule 29.15 motion, which the circuit court granted. In its order, the circuit court listed numerous reasons why Exhibit 134 was exculpatory and material. It noted that, when Detective Woods retrieved the tape at 5:40 P.M., the time stamp

on the tape indicated 5:39:50 P.M. This fact, the circuit court concluded, would have established that the time stamp was accurate and would have cast doubt on the State's alternative timeline theory. The State asserts that the circuit court clearly erred in making this conclusion.

■ Before we consider the merits of the circuit court's order on this issue, we must address the State's contention that the circuit court should have ignored this issue because Buchli did not present it in his amended motion. The State relies on Rule 29.15(d), which says:

> The motion to vacate shall include every claim known to the movant for vacating, setting aside, or correcting the judgment or sentence. The movant shall declare in the motion that the movant has listed all claims for relief known to the movant and acknowledging the movant's understanding that the movant waives any claim for relief known to the movant that is not listed in the motion.

The State concedes that Buchli raised a *Brady* type claim in his amended motion regarding Exhibit 134, but it maintains that he limited his claim to an allegation that Exhibit 134 was exculpatory and material in that it shows (1) when he arrived to work on the day of the murder, and (2) Paul Hoglen leaving the building before Buchli's return after leaving shortly after 2 P.M. The State argues that the circuit court did not have jurisdiction to enter an order finding that Exhibit 134 was exculpatory and material on the basis that it would have cast doubt on the State's timeline theory. We disagree.

In a section entitled, "Brady Violations: Prosecution's failure to Disclose Exculpatory Evidence of (1) the Complete and Unaltered Surveillance Video ...," Buchli's motion alleged:

An Order from this Court vacating defendant's convictions is also warranted because the prosecution withheld exculpatory evidence that could have been used to impeach Paul Hoglen, thereby misleading the jury and could have further compromised the prosecution's timeline or conclusively proven that Mr. Armitage was alive and well when Mr. Buchli walked out of the building.... The prosecution's suppression of this exculpatory evidence violated Mr. Buchli's constitutional rights ... in that the suppressed evidence *would discredit the prosecution's timeline,* would have corroborated Mr. Buchli's testimony on issues of credibility and could have led to evidence proving Mr. Buchli's innocence.[1]

The amended motion also alleged:

[S]uppression of the original video tape allowed the prosecution to hide the truth about Mr. Hoglen's activities, to make material misrepresentations about Paul Hoglen's activities throughout the trial and conceal Mr. Hoglen's perjury about what he was doing, where he was and what he observed on May 5, 2000.

In another section, Buchli's motion outlined facts supporting his conclusion that Hoglen was lying about the time when he left the building and alleged:

At trial, Paul Hoglen testified at trial that he was sitting in his truck parked in the alley near the loading dock ... when he saw Mr. Buchli leave the building at 2:10 p.m., according to the clock in his truck.... Mr. Buchli has always maintained that Mr. Hoglen was not present when he left the building or when he returned[.] ... It has now been established that even a cursory review of the original surveillance videotape proves, on its face, that Paul Hoglen was, in fact, lying.

These allegations preserved Buchli's claim that Exhibit 134 was exculpatory because it cast doubt on the State's timeline theory. Although the motion did not mention Detective Woods and his confirmation of the time stamp's accuracy when he retrieved the tape, the State cites no authority—nor do we find any—that Buchli was obligated to recite in his motion every fact underlying his claim. Instead, it cites *Doyle v. Crane,* 200 S.W.3d 581, 590 (Mo.App.2006), and *State ex rel. Harvey v. Wells,* 955 S.W.2d 546, 547 (Mo. banc 1997), in support of the proposition that Missouri is a fact pleading state.

■■■ Of course, the State is correct that, in the context of civil trials, Missouri is a fact-pleading state. *Doyle* and *Harvey,* however, do not stand for the proposition that a motion filed pursuant to Rule 29.15 must allege *every fact* underlying a claim. Rather, the law in Missouri is that the motion must make more than a general allegation that a *Brady* type violation occurred, and it must allege facts, not conclusions, supporting this claim. *State v. Ferguson,* 20 S.W.3d 485, 503 (Mo. banc 2000).

Buchli adequately preserved his claim. The circuit court had jurisdiction to enter its order.

■■■ Concerning the merits of its claim about Exhibit 134, the State asserts that the circuit court erred because Exhibit 134 was not material. Under *Brady,* the State has a broad duty "to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *State v. Goodwin,* 43 S.W.3d 805, 812 (Mo. banc), *cert. denied,* 534 U.S. 903, 122 S.Ct. 234, 151 L.Ed.2d 168 (2001). The State violates due process if (1) it does not disclose evidence that is favorable to a

---

1. We added the emphasis.

defendant because it is either exculpatory or impeaching, (2) it has suppressed the evidence intentionally or inadvertently, and (3) the undisclosed evidence is material. *Strickler v. Greene*, 527 U.S. 263, 282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). In the context of a *Brady* type challenge, evidence is material if it would have provided the defendant with plausible and persuasive evidence to support a theory of innocence or would have enabled the defendant to present a plausible, different theory of innocence. *State v. Parker*, 198 S.W.3d 178, 180 (Mo.App.2006).

Rule 29.15(k) limits our review "to a determination of whether the findings and conclusions of the [circuit] court are clearly erroneous." Error is clear only when we have a definite and firm impression that the circuit court has made a mistake. *State v. Johnson*, 901 S.W.2d 60, 62 (Mo. banc 1995).

The State concedes that Buchli carried his burden of establishing (1) that Exhibit 134 was favorable to him because it was exculpatory and had impeachment value and (2) that the State suppressed Exhibit 134. The only issue is whether or not Exhibit 134 was material.

■ The courts have been less than articulate in describing what constitutes material evidence. The United States Supreme Court has declared that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). It has instructed that, in evaluating materiality, "the question is 'whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Strickler*, 527 U.S. at 290, 119 S.Ct. 1936 (citation omitted). But, it has explained

that "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). The materiality standard is lower than the one that we would employ in cases of newly-discovered evidence in which we would reverse judgment and order a new trial only if the new evidence would have changed the outcome of the original trial. *Hancock v. Shook*, 100 S.W.3d 786, 798 (Mo. banc 2003). But the standard is higher than the typical "harmless error" standard applied in other cases.

Precisely where the *Brady* standard of materiality lies—somewhere between the newly-discovered evidence standard and the "harmless error" standard—is difficult to formulate. It appears to us, however, that the United States Supreme Court would have us ask whether or not the undisclosed evidence would have been significant to the defendant in the way that he tried his case: Would it have provided him with plausible and persuasive evidence to support his theory of innocence or would it have enabled him to present a plausible, different theory of innocence? If either question can be answered affirmatively, the evidence is material under a *Brady* analysis. *Parker*, 198 S.W.3d at 180.

■ The State's evidence against Buchli established that Armitage's telephone conversation immediately before his death ended at 2:02:05 P.M. The video surveillance tape indicated that Buchli left the building three and a half minutes later, at 2:05:38 P.M. Trying to expand the window of opportunity for Buchli to commit the murder, hide evidence of the murder, clean himself, and exit the building, the State argued

that the time stamp was slow and was as much as *five minutes* behind real time. We have outlined, *supra,* the evidence the State used to support its argument. From this evidence, the prosecuting attorney argued to the jury:

> But he's got to wait, and he's got to wait, and he's got to wait 15 minutes until Richard Armitage hangs up that phone, and he goes in there and he does it quick, and[,] yeah, the time frame is a little disconcerting because the surveillance camera is off. It says 2:05:52, which is essentially 2:06. But it's probably about 2:09, 2:10.

The State gave Buchli a part of the surveillance tape—what appeared to be the crucial time between 1:13 P.M. and 2:39 P.M.—but it did not disclose the existence of the entire day's recording. Had Buchli had Exhibit 134, he could have used it to establish that, when Detective Woods retrieved the tape at 5:40 P.M., the time stamp indicated 5:39:50 P.M. In concluding that Exhibit 134 was material, the circuit court said:

> The State's failure to provide the defense with a copy of Exhibit 134 prevented the defense from ... establishing that the time-stamp shown on the surveillance video was accurate and not three or four minutes slow as argued by the State.
>
> . . . .
>
> In addition, ... that the video ends at 5:39:50 p.m., which coincides precisely with the testimony of Detective Mark Woods that he recovered the surveillance video on the date of the attack at "5:40 p.m." without referring to the time-stamp on the video, is favorable evidence to the defendant, and tends to demonstrate that the time-stamp on the surveillance video was, in fact, accurate, rather than three or four minutes slow as argued by the prosecution. At a minimum, however, such evidence would

have been favorable to the defendant, and would have provided valuable evidence to the defense, contradicting and casting doubt on the prosecution's evidence that (1) twelve days after the attack the time shown on the recording device at the Power & Light Building was "approximately three minutes behind" the time shown on Detective Mark Wood's pager, and (2) dispatch sheets from Fire/MAST that vary three to four minutes from the time-stamp on the surveillance video at the time emergency crew entered the building. Thus, Exhibit 134 could have provided the defense valuable evidence casting serious doubt on, if not destroying, the State's altered timeline. As a result, the Court finds Mr. Buchli has established materiality and prejudice[.]

This conclusion is not clearly erroneous. Exhibit 134 would have provided Buchli with plausible and persuasive evidence to support his theory of innocence by supporting his theory that he did not have enough time to commit the crime. If believed, this evidence would have established that Buchli had only three and a half minutes to club Armitage nine times with a blunt object, clean any blood from himself, and get down 13 floors to leave the building. Although the jury was free to believe that Buchli could have done all of these acts in less than four minutes, Buchli conceivably could have used Exhibit 134 to persuade the jury that the "time window" was too brief. Exhibit 134 puts the case in such a different light and "undermine[s] confidence in the verdict.' " *Strickler,* 527 U.S. at 290, 119 S.Ct. 1936.

The State concedes the importance of its alternative timeline theory. At trial, in closing arguments, the State admitted that the time frame was "disconcerting" because the surveillance tape was slow. Nevertheless, it argued that the testimony established that Buchli left the building at

2:10 P.M., leaving him nine minutes to commit the murder and leave the building. At the motion hearing, Amy McGowan, a prosecuting attorney, admitted that determining when Buchli left the building was "significant to the State." Kate Mahoney, another prosecuting attorney, testified that the State was "concerned" that the jury would not feel that three and a half minutes was long enough to commit the murder and leave the building. Given the importance of the timeline and Exhibit 134's significance in determining this timeline, Exhibit 134 undoubtedly was material.

On appeal, the State claims that Exhibit 134 was not material evidence because Woods, in testifying that he retrieved the tape at 5:40 P.M., was unclear as to whether he was referring to the time on his watch or to the time on the video. Because he could have been referring to the time on the time stamp and not the time on his watch or pager, the State claims that Buchli did not carry his burden of establishing that Exhibit 134 was material. The State, however, ignores Wood's testimony:

Q. What was the time you recovered the tape?

A. 1740 hours.

Q. Which would be what?

A. 5:40 P.M.

During cross-examination, he testified:

Q. Now, this tape that's there in the building, is that a tape that's a 24 hour tape?

A. I don't know the answer to that.

Q. Do you know if that tape starts at 7:00 in the morning?

A. I don't know that. I was advised when I recovered the tape that it was the tape that had been in the recording device for the past several hours. I had no time[—]I had no knowledge what time that tape had started or finished.

Obviously, in light of his saying that he did not know what time that the tape had started or stopped, Woods was not referring to the time on the time stamp. Hence, we cannot say that the motion court was clearly erroneous in concluding that the time stamp at the end of the video tape, coupled with Wood's testimony, would have been evidence tending to establish that the time stamp was accurate and that this evidence would have provided Buchli with plausible and persuasive evidence to support his theory that he did not have enough time to commit the murder.

We, therefore, cannot say that the motion court was clearly erroneous in concluding that the State violated *Brady* when it failed to disclose Exhibit 134. Because this violation alone was sufficient to grant Buchli a new trial, we need not decide any other issue. We, therefore, affirm the circuit court's judgment.

THOMAS H. NEWTON, Presiding Judge, and LISA WHITE HARDWICK, Judge, concur.