**Yntell C. DULEY, Respondent,**

v.

**STATE of Missouri, Appellant.**

**No. WD 69962.**

Missouri Court of Appeals,
Western District.

Nov. 24, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 2010.

Application for Transfer Denied
March 23, 2010.

Basil L. North, Jr., Esq., Kansas City, MO, for appellant.

Robert J. Bartholomew, Jr., Esq., Jefferson City, MO, for respondent.

BEFORE DIVISION ONE: ALOK AHUJA, Presiding Judge, JAMES M. SMART, JR. and LISA WHITE HARDWICK, Judges.

LISA WHITE HARDWICK, Judge.

The State of Missouri appeals a circuit court judgment granting post-conviction relief to Yntell Duley pursuant to Rule 29.15 and, alternatively, Rule 25.18.[1] The judgment vacated Duley's convictions for second-degree murder, unlawful use of a weapon, three counts of first-degree assault, and four counts of armed criminal action, based on a finding that the State failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The State contends the circuit court erred in granting relief because: (1) the *Brady* claim was not cognizable in this post-conviction proceeding; (2) Duley failed to prove a *Brady* violation because the undisclosed evidence was not material; and (3) Rule 25.18 is not applicable in a post-conviction proceeding. For reasons explained herein, we find no error and affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

In February 2003, the State charged Duley in connection with a shooting that occurred on November 23, 2000, at the Troostwood Banquet Hall in Kansas City. The evidence at trial established that 350–400 people attended a party that night at the banquet hall. One person died as a result of the shooting and several others were injured.

Witnesses reported that shots were fired both inside and outside the banquet hall. Six of the party attendees told investigating officers that they saw Duley shoot a gun inside the banquet hall. All six witnesses later recanted their statements. Pursuant to Section 491.074,[2] the State presented the six witnesses' prior inconsistent statements at trial.

A police officer testified that two shell casings were recovered inside the banquet hall. Markings on the shells indicated they were all fired from the same gun. Outside the banquet hall, police recovered five shell casings that were all fired from the same gun but a different gun from the one involved in the inside shooting.

At Duley's home, the police found four shell casings that had been fired from the same gun that fired the shells recovered outside the banquet hall. The police were unable to locate the guns involved in the shooting.

Duley did not testify at trial but called several witnesses who attended the party with him. All of the witnesses testified that Duley was not the shooter.

At the conclusion of the evidence, the jury found Duley guilty of second-degree murder, unlawful use of a weapon, three counts of first-degree assault, and four counts of armed criminal action. Consistent with the jury's recommendation, the circuit court sentenced him to life imprisonment plus 186 years.

Duley appealed, challenging the sufficiency of the evidence to support his convictions. On April 24, 2007, this court affirmed the convictions and sentence. *State v. Duley*, 219 S.W.3d 842 (Mo.App. 2007).

On July 25, 2007, Duley timely filed a *pro se* Rule 29.15 motion, which was later amended by appointed counsel. The amended motion alleged that the State failed to disclose exculpatory evidence in violation of Rule 25.03 and Duley's constitutional rights as recognized in *Brady*.

---

1. All rule citations are to the Missouri Rules of Criminal Procedure (2009), unless otherwise indicated.

2. All statutory citations are to Revised Missouri Statutes (2000) unless otherwise indicated.

The exculpatory evidence was a police investigative report in which a witness, Terry Hutton, made a statement that Duley was not the shooter and identified another man, Charles "Nose" Winston, as the shooter at the banquet hall. Hutton's statement also identified Terrian Carter and "Waynehead" as possible witnesses to the shooting.

Following an evidentiary hearing, the circuit court sustained the Rule 29.15 motion, vacated Duley's convictions, and granted a new trial. As explained in the court's judgment:

> The police report (Exhibit 1 or 3) which was not disclosed in this case is clearly subject to disclosure under Supreme Court Rule 25.03 and Local Rule 32.5. Pursuant to Supreme Court Rule 25.18 and appellate court decisions, this Court finds that its judicial duty is to remedy the discovery violation of withholding evidence which was committed by the police department and the prosecutor's office. The legal remedy for withholding evidence is to vacate and set aside Mr. Duley's judgment of conviction and sentence.

The State appeals the judgment granting post-conviction relief.

### STANDARD OF REVIEW

On appeal of a Rule 29.15 motion, our review is limited to a determination of whether the circuit court's findings and conclusions are clearly erroneous. **Rule 29.15(k).** "Error is clear only when we have a definite and firm impression that the circuit court has made a mistake." *Buchli v. State,* 242 S.W.3d 449, 454 (Mo. App.2007).

### ANALYSIS

**1. Propriety of Post–Conviction *Brady* Claim**

The State contends that Duley's *Brady* claim is not cognizable in this post-conviction proceeding because Duley failed to make any showing that the violation could not have been raised on direct appeal. In general, a Rule 29.15 motion is not a substitute for a direct appeal. *State v. Tolliver,* 839 S.W.2d 296, 298 (Mo. banc 1992). Claims of trial error will only be considered in a post-conviction proceeding "where fundamental fairness requires, and then, only in rare and exceptional circumstances." *Tisius v. State,* 183 S.W.3d 207, 212 (Mo. banc 2006).

In both his *pro se* and amended Rule 29.15 motions, Duley alleged that the State had withheld evidence of statements made by Terry Hutton during a police investigation. The amended motion specifically alleged that the police obtained Hutton's statement five months prior to trial, but the State "never furnished" the exculpatory information to Duley or his counsel. During the post-conviction proceeding, the State acknowledged that it failed to produce the statement to Duley. The prosecutor, Kevin Harrell, testified that he was unaware of the investigative report or Hutton's statement until Duley filed the Rule 29.15 motion. Similarly, Duley's trial counsel, Kenton Hall, testified that he had never seen the police report prior to the evidentiary hearing on the Rule 29.15 motion.

There is no dispute that the investigative report was not properly disclosed to Duley at any time prior to or during the trial proceeding. But the record does not indicate how or when Duley eventually learned about the existence of the report. The State argues that Duley was required to plead and prove *when* he first became aware of the nondisclosure. The State contends that Duley cannot pursue the *Brady* claim in a post-conviction proceeding if he knew about the nondisclosure

during the direct appeal and failed to raise it.

Our court addressed the same argument in *Buck v. State*, 70 S.W.3d 440, 445–46 (Mo.App.2000), which involved a post-conviction claim that the State failed to disclose the prior convictions of its sole prosecution witness. The State argued that the nondisclosure claim could not be brought in a Rule 29.15 proceeding because the movant failed to raise the issue on direct appeal. *Id.* at 445. As here, the record in *Buck* was unclear as to when the movant learned of the nondisclosure. *Id.* The court held that a nondisclosure claim is cognizable in a Rule 29.15 proceeding, regardless of whether the movant was aware of the nondisclosure during the direct appeal. *Id.* at 445–46. The court explained that issues of prosecutorial nondisclosure cannot be fully addressed on direct appeal because new evidence cannot be introduced:

> Assuming Buck knew about the prior convictions, he could not have raised the nondisclosure on direct appeal. Once the trial concluded, Buck lacked any means to prove [the] prior convictions. Appellate courts consider only the record made in the trial courts. Our jurisdiction is appellate and we cannot receive nor consider new evidence. Documents that were never presented to nor considered by the trial court cannot be included in the record on appeal. Buck's Rule 29.15 motion represents his only opportunity to correct the prosecution's nondisclosure.

*Id.* (internal citations omitted).

As in *Buck*, Duley's first opportunity to *prove* his nondisclosure claim was during the post-conviction proceeding. Duley was unaware of the *Brady* violation during the trial proceeding and could not have presented new evidence of the nondisclosure on direct appeal. Although trial errors are generally improper for Rule 29.15 review, fundamental fairness requires that Duley be allowed to fully challenge the State's admitted failure to follow the rules of criminal discovery. *Id.* at 446. This prosecutorial nondisclosure presents a "rare and exceptional circumstance" that warrants post-conviction review of trial error. *Id.*

The *Brady* violation was cognizable under Rule 29.15 and, thus, the motion court did not err in allowing Duley's claim to proceed. Point I is denied.

## 2. Sufficiency of Evidence on *Brady* Claim

■ The State contends the circuit court clearly erred in granting post-conviction relief on the *Brady* claim because Duley failed to show that the nondisclosed evidence was material. In particular, the State argues that Hutton's statements in the police investigative report would not have benefitted the defense because Duley previously had access to some of the information, and Duley failed to demonstrate the evidence would have been admitted at trial.

■ The *Brady* rule requires the State to "disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *State v. Goodwin*, 43 S.W.3d 805, 812 (Mo. banc 2001). Under this rule, the State violates constitutional guarantees of due process if: (1) it does not disclose evidence that is favorable to the defendant because it is exculpatory or impeaching; (2) it has suppressed the evidence either intentionally or inadvertently; and (3) the undisclosed evidence is material. *Buchli*, 242 S.W.3d at 453–54. Here, the State concedes that it inadvertently failed to disclose a police investigative report that contained exculpatory evidence favorable to Duley. The only issue on appeal is whether Duley met his burden

of showing the evidence was material to his defense.

 "[E]vidence is material if it would have provided the defendant with plausible and persuasive evidence to support a theory of innocence or would have enabled the defendant to present a plausible, different theory of innocence." *Id.* at 454. A finding of materiality depends upon the "the nature of the charge, the evidence presented by the State, and the role that the nonproduced evidence would likely have played." *State v. Bebee,* 577 S.W.2d 658, 662 (Mo.App.1979) (internal quotation marks and citations omitted). The *Brady* standard requires us to consider whether the evidence would have been significant to the defendant in the way he tried his case. *State v. Parker,* 198 S.W.3d 178, 180 (Mo.App.2006). The question is not whether the jury might have rendered a different verdict but whether, in the absence of the evidence, Duley received a fair trial, meaning a verdict worthy of confidence. *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

At the Rule 29.15 hearing, Duley presented evidence in support of his nondisclosure claim. Detective Everett Babcock of the Kansas City Police Department testified that he interviewed Terry Hutton, on February 6, 2004, in connection with a homicide investigation in the unrelated murder of Torrez Rodriguez. Hutton identified Chatha Tatum, known as "Edie," as the killer of Rodriguez. Duley's name came up in the course of the interview. Hutton said he knew Duley as one of "Edie's people," but he did not know if Duley was "out of trouble or not." Hutton told Detective Babcock: "I don't like [Duley], but he didn't do that," apparently in reference to the November 2002 shooting at the Troostwood Banquet Hall.

Detective Babcock asked Hutton how he knew that Duley didn't do it. Hutton responded: "Cause I was there and I saw it." Hutton explained that Duley and Charles "Nose" Winston were dancing at the banquet hall party and "throwing up" gang signs. He said a guy and some girls were "looking all crazy at Nose" and Nose just started shooting. Hutton also knew Nose as one of "Edie's people."

Hutton told Detective Babcock that he attended the banquet hall party with a male named Terrian Carter and another male named "Waynehead," who lived in Grandview. Hutton also said that Duley "took the case" for Nose and, in return, Edie and Nose were paying for Duley's defense counsel and giving money to Duley's mother.

Hutton declined to make a formal statement at the time of the interview, but he told Detective Babcock that he might be willing to sign a statement and testify in the future if it would help him with his upcoming court case. After the interview with Hutton, Detective Babcock typed up his investigative report and highlighted in red the information pertaining to the shooting at the Troostwood Banquet Hall. He gave a copy of the report to the police unit that was investigating the banquet hall shooting, but he never spoke with anyone at the prosecutor's office who was handling Duley's case.

Duley also presented testimony from his trial counsel, Kenton Hall, at the Rule 29.15 hearing. Hall testified that the "working defense theory" was that Duley was innocent and that Charles "Nose" Winston fired the shots inside the banquet hall. Hall subpoenaed Winston for an pre-trial interview, but Winston invoked the Fifth Amendment and said he would refuse to testify at trial. Hall was unaware of any other witnesses who could implicate Winston as the shooter. Ultimately, he

presented several witnesses at trial who testified that Duley was not the shooter, but the defense was unable to present any evidence of Winston's involvement.

Hall testified that the information in Detective Babcock's investigative report was never disclosed to him at any time prior to or during the trial. If the report had been made available, Hall said he would have attempted to locate and interview Terry Hutton, Terrian Carter, and Waynehead to obtain eyewitness evidence of Winston's involvement in the banquet hall shooting.

Based on this record, Duley argued to the motion court that the nondisclosed evidence would have supported his theory of innocence at trial. The State had charged Duley with murder, unlawful use of weapon, assault, and armed criminal action. The State's case was largely based on witnesses who originally identified Duley as the banquet hall shooter but recanted their statements at trial. To counter the State's case, Duley presented several trial witnesses who testified that he was not the shooter. Hutton's statements in Detective Babcock's report would have bolstered this defense by providing information about additional witnesses who may have been able to identify Charles Winston as the shooter. By failing to disclose the report, the State deprived Duley of the opportunity to further investigate the eyewitness accounts of Hutton, Terrian Carter, and Waynehead, and to present evidence of the actual identity of another gunman.

The motion court reasonably concluded that the undisclosed evidence was material to Duley's defense because it revealed the existence of a witness, Hutton, who had given a detailed explanation of the circumstances surrounding the shooting. As stated in the motion court's judgment: "What evidence can be more exculpatory and more MATERIAL to the defendant's guilt than an eyewitness who is familiar with the persons, stating to a police officer that, despite his dislike for Mr. Duley, Mr. Duley 'didn't do that,' then identifying who 'did it' (the shooting) and demonstrating how it was done?"

The State contends the motion court erred in this finding of materiality because, despite the nondisclosure, Duley had pre-trial access to another police report showing that Hutton attended the party at the banquet hall. During the investigation of the shooting, Lakeia Berryman told police that she had seen her brother, Terry Hutton, at the party that night. Berryman, however, did not indicate that either she or her brother had witnessed the shooting. The police report merely identified Berryman and Hutton as being among the 350–400 people who attended the party. This large number of attendees made it virtually impossible for defense counsel to interview everyone who could have potentially witnessed the shooting. Without further details from Berryman's statement, Duley and his counsel had no reason to believe that Hutton might have exculpatory information. Detective Babcock's withheld report provided the relevant information about Hutton's eyewitness account that was critical to Duley's theory of innocence. Thus, the court did not err in determining that the undisclosed evidence was material.

The State further argues that Duley failed to show that the information in Babcock's report would have been admitted as evidence at trial. Hutton testified at the Rule 29.15 hearing that had he been called as a witness at Duley's trial, he would have invoked the Fifth Amendment and refused to testify about the shooting. The State also points out that Duley did not present Terrian Carter and Waynehead at the Rule 29.15 hearing and, therefore, failed to demonstrate that he would have been able to present them as witnesses at trial.

The State's argument ignores the fact that the nondisclosure deprived Duley of any opportunity to contact Hutton, Carter, or Waynehead prior to trial and use information from those witnesses in preparing his defense of innocence. There is no way of knowing what additional witnesses or evidence might have been developed from these contacts. Although the motion court's judgment may not say so explicitly, by repeatedly stating that it is for a jury to determine the ultimate weight to give to Hutton's account, the court's judgment plainly presumes that Hutton's account of events would have been admitted at Duley's trial if the prosecution had timely disclosed Detective Babcock's report. Hutton's account may have been presented through his own testimony or as a prior inconsistent statement admissible as substantive evidence under § 491.074, if Hutton had recanted it—the same basis on which the majority of the prosecution's substantive evidence was admitted. This presumed finding is not clearly erroneous under the evidence available to the motion court.

Six months prior to the trial, Hutton had told Detective Babcock that he might be willing to testify to his exculpatory statements. It was only more recently, at the Rule 29.15 hearing in 2008, that Hutton claimed he would invoke the Fifth Amendment. In questioning Hutton at the evidentiary hearing, the prosecutor (who had also been one of the prosecuting attorneys at trial), stated to him that, "[h]ad you testified in July of 2004 in *State of Missouri v. Yntell Duley*, you would have been given immunity." We also note that the basis for Hutton's claim of a Fifth Amendment privilege—against testifying to a crime he witnessed but apparently did not participate in—is not entirely clear. Finally, the trial court's judgment specifically notes that Hutton's claim at the evidentiary hearing that he would invoke his privilege against self-incrimination was "not an everlasting decision." We cannot conclude that the motion court clearly erred in finding that Hutton, Carter, and Waynehead would have provided valuable information to Duley's defense in 2004, based solely on the fact that they might be unavailable or unwilling to testify several years later.[3]

We find no clear error in the motion court's ruling that the State violated the *Brady* rule by failing to disclose to Duley the exculpatory information in Detective Babcock's investigative report. The court properly found the exculpatory information was material because it would have provided Duley with plausible and persuasive evidence to support his theory of innocence and enabled him to present a different theory of innocence by implicating Charles "Nose" Winston as the shooter. The State's *Brady* violation was a sufficient basis for the court to grant relief under Rule 29.15 by vacating Duley's convictions and ordering a new trial. *Buchli*, 242 S.W.3d at 456. Point II is denied.

### 3. Propriety of Relief under Rule 25.18

In the final point on appeal, the State contends the motion court erred in alternatively granting relief under Rule 25.18, because that provision is only applicable to criminal trial court proceedings and not post-conviction actions. We need not address this issue in light of our ruling that the court properly granted relief under Rule 29.15. Point III is denied.

---

**3.** Although the State now argues that Detective Babcock's report does not establish that Carter and Waynehead were in a position at the party to observe the shooting, Detective

Babcock himself agreed at the evidentiary hearing that "not one, but three people, are contained in your report who were right there to observe what he [*i.e.*, Hutton] described."

## CONCLUSION

We affirm the circuit court's judgment.

All Concur.