Nicholas **WALLAR**, Appellant,

v.

**STATE of Missouri, Respondent.**

**No. WD 75103.**

Missouri Court of Appeals, Western District.

July 23, 2013.

---

700

Patrick W. Peters, Kansas City, MO, for Appellant.

Chris Koster, Attorney General, Evan J. Buchheim, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before Division Two: THOMAS H. NEWTON, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

Nicholas Wallar appeals the denial, following an evidentiary hearing, of his Rule 24.035 motion for post-conviction relief.[1] In his motion, Wallar claimed that he should be discharged from his convictions due to an alleged systemic failure of the Jackson County Prosecuting Attorney's Office to comply with the disclosure obligations of Rule 25.03. The motion court rejected Wallar's claim, finding that it had been waived by the entry of his guilty pleas, that Wallar failed to plausibly demonstrate materiality of the information sought, and that Wallar's testimony indicating that, if the State had not violated the discovery rule, he would have proceeded to trial, was not credible. Finding no error of law, we affirm.

**Factual Background**

On April 4, 2009, Wallar, using a black handgun, stole a car from a gas station patron. Then, around 9:00 p.m., Wallar stole a pizza delivery driver's vehicle, while the driver was giving pizza to a customer. The driver, initially believing that Wallar was simply confused and got into the wrong vehicle, attempted to stop Wallar, but Wallar flipped the driver off; said, "peace out, bitch"; and drove away.

Independence Police Officer Richard Remmington responded to a stolen-auto-in-progress call regarding the delivery driver's vehicle. Officer Remmington was advised that the suspect was last seen walking at 32nd Street and Lee's Summit Road. When Officer Remmington arrived in the area, he contacted three witnesses who pointed him in the direction of the delivery driver's vehicle, which Wallar had abandoned on the side of the road. The same witnesses told Officer Remmington that the suspect was walking southbound and appeared to be carrying a dark object in his hands. Numerous officers responded to the area. Among those officers was Sergeant Steven Boles, who observed Wallar walking at the intersection of 35th Street and Lee's Summit Road. After ad-

---

1. All rule references are to the Missouri Supreme Court Rules (2012), unless otherwise noted.

vising dispatch of his location, Sergeant Boles got out of his vehicle to make a pedestrian stop. At that point, Wallar pointed a black handgun at Sergeant Boles and began firing multiple shots.[2] Sergeant Boles retreated, but Wallar pursued him and continued to fire. Sergeant Boles was able to return fire, striking Wallar once.

Officer Barry Huwar responded to a call for assistance with his dashboard camera activated. When Officer Huwar arrived, he saw Wallar shooting at Sergeant Boles. Officer Huwar fired several shots at Wallar and eventually ran his car into Wallar to stop him from shooting at Sergeant Boles. Wallar was transported to the hospital and treated for his injuries. The camera in Officer Huwar's car captured video footage of Wallar shooting at Sergeant Boles.

Wallar was indicted for first-degree robbery and armed criminal action for the theft of the first vehicle, second-degree robbery for the theft of the second vehicle, and first-degree assault on a law enforcement officer and armed criminal action for shooting at Sergeant Boles. His trial was set for November 15, 2010. On August 12, 2010, Wallar entered guilty pleas to the charges, pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), because he had been too drunk to recall the events with which he was charged and, therefore, could not affirmatively state that he had committed them.[3]

At the plea hearing, the prosecutor indicated that Wallar was to enter an open plea, subject to the full range of punishment, and the only concession the State made was that it would not oppose a sentencing assessment report and deferred sentencing. Wallar affirmed that the prosecutor's recitation conformed to his understanding of the plea agreement.

After verifying that Wallar could read, write, and understand the English language; and that Wallar was not then under the influence of any drugs, alcohol, or mental impairments, the court confirmed Wallar's desire to enter *Alford* pleas to the charges. Wallar advised the court that he was also facing probation revocation for a charge in Oklahoma. The court then went through the various rights attendant to a jury trial that Wallar was giving up by pleading guilty and verified that Wallar not only understood all of them but also agreed to waive them. Wallar specifically acknowledged waiving any potential defenses he might have to the charges and the right to challenge "any shortcomings in the State's case." The prosecutor then recited the range of punishment for each charge, verified that Wallar understood that the sentences could run either concurrently or consecutively, and then provided the court with a factual basis for Wallar's pleas. The court found that the evidence, as recited by the prosecutor, "substantially would negate any opportunity [Wallar] would have to secure acquittal and … [was] very strong evidence of his guilt."

**2.** According to Wallar's testimony at the guilty plea hearing and information from the sentencing assessment report, it appears that Wallar was attempting to commit "suicide by cop" when he shot at Sergeant Boles out of a desire to avoid going to prison on a conviction in Oklahoma. At the hearing, Wallar testified, "I remember thinking that if I shot at him[,] he would certainly kill me."

**3.** Wallar indicated that, in the time immediately preceding the charged events, he had been on a three-day alcohol binge without sleep, which commenced after a cocaine binge wherein he had consumed "a lot" of cocaine.

The court then questioned Wallar about the voluntariness of his pleas, and Wallar confirmed that he was entering the pleas voluntarily, in the absence of any force, coercion, threats, or promises. Wallar agreed that he had been provided sufficient opportunity to discuss his case with counsel, denied any complaints about counsel, and expressed satisfaction with counsel's performance. The court accepted Wallar's pleas, ordered a sentencing assessment report, and set the matter for sentencing.

At the sentencing hearing, the court received victim impact testimony from the delivery driver, Officer Huwar, and Sergeant Boles, and a letter from a gas station patron, who was unable to attend the sentencing hearing. The court also received several letters written on Wallar's behalf, along with testimony from Wallar's father, Wallar's cousin, Wallar's good friend, and Wallar's cell-mate at the county jail.

The prosecutor argued for consecutive terms of life imprisonment on the four class A felonies and fifteen years on the class B felony. Wallar sought the minimum term for each count, with all counts to run concurrently, for a total of ten years' imprisonment. Wallar spoke on his own behalf, expressing remorse for his actions, apologizing to the victims, and seeking mercy from the court. The court sentenced Wallar to concurrent terms of thirty years on each of the class A felonies and fifteen years on the class B felony, for an aggregate total of thirty years' imprisonment.

Thereafter, Wallar filed a pro se Rule 24.035 motion for post-conviction relief. Counsel filed an amended motion, alleging (among other claims) that Wallar's pleas were unknowing and involuntary in that the Jackson County Prosecutor's Office failed to comply with its disclosure obligations pursuant to Rule 25.03 and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). More specifically, Wallar's motion pled that the State failed to disclose documents pertaining to internal investigations of Sergeant Boles and Officer Huwar and prior criminal records of endorsed state witnesses. He further pled that, if he had received this information, he would not have pled guilty, but would have insisted on going to trial.

The motion court held an evidentiary hearing, wherein it received testimony from Wallar and from his trial counsel, David Wylie. At the hearing, Wallar chose not to present evidence on any of the claims in his amended Rule 24.035 motion except those related to the alleged disclosure violations.

In support of his claim regarding nondisclosure of the internal affairs investigations of Sergeant Boles and Officer Huwar, Wallar testified that he never received any personnel files of any of the 35 officers associated with the investigation of his case. Wallar initially testified that he knew nothing of an internal affairs investigation until he was so advised by post-conviction counsel, but he then recalled that an officer, who was from internal affairs, sought a statement from him after he arrived at the jail upon being released from the hospital. Wallar testified that he refused to give the officer a statement and would not allow the officer to record his refusal to give a statement. But, Wallar claims, he asked the officer (off the record) if he had shot anybody, and the officer told him that he did not, and Wallar responded, "[w]ell, thank God that didn't happen." Wallar testified that he never received any report containing those statements. Wallar testified that, had he known he did not have this information related to the internal affairs investigation, he would not have pled guilty.

In support of the claim regarding nondisclosure of criminal convictions for the State's witnesses, Wallar introduced his request for disclosure, filed August 18, 2009, which sought information about criminal convictions of the witnesses the State intended to call at any hearing or trial, and the State's response, filed June 30, 2009, which stated: "The State has no information at this time with respect to any felony or misdemeanor convictions which the State's witnesses may have. At such time as that information becomes available, it will be provided in a supplemental response to the defendant's request for discovery."[4] Wallar also presented documents from Case.net reflecting criminal convictions for individuals with the same or similar names and the same birth year as some of the State's witnesses. The motion court received the Case.net documents, over the State's objection, but noted that the exhibit "doesn't prove much of anything" and that the court did not "find it all that probative." Wallar also testified that, if he had been provided this information, he would not have pled guilty.

On cross-examination, Wallar testified that he pled guilty in order to get out of county jail and moved to the Department of Corrections and because he felt that nothing was happening on his case, and he wanted to get it moving. Wallar also indicated that he wanted to view videos pertaining to the crimes so that he could assess whether he committed them, given that he could not recall 95% of the events of that week. Specifically, he testified, "[t]o see a video would have greatly affected my decision to plead guilty." He acknowledged that, sometime after viewing the dashboard camera video of himself shooting at Sergeant Boles, he contacted trial counsel and expressed his desire to plead guilty.

The State presented testimony from trial counsel, David Wylie. Wylie testified that a few weeks after reviewing the dashboard camera video, Wallar sent him a letter indicating his desire to plead guilty. Before viewing the video, Wallar had intended to go to trial. Wylie testified that, after receiving Wallar's letter seeking a plea agreement, Wylie switched his preparation approach; he had anticipated potential fights regarding disclosure of internal affairs documentation if the matter went to trial, but he did not pursue those fights once he knew they were seeking a plea agreement. Wylie also testified that, although he had not received criminal conviction information on the State's witnesses at the time of Wallar's plea, he anticipated having that information before a trial, if one were to occur.

The court issued findings of fact and conclusions of law, overruling Wallar's Rule 24.035 motion. Specifically, the court found that Wallar's disclosure violation claims had been waived by his guilty pleas,

4. The State acknowledged that it had not yet run a criminal background check on potential State witnesses. Wallar argues that the language used in the Jackson County Prosecutor's Office's standard discovery response to requests for criminal convictions of witnesses the State intends to call is misleading in that it implies that the witnesses' criminal histories had already been run but revealed no prior convictions, rather than the fact that the histories simply had not been run at that point in time. We agree. Although not misleading to the defense in this case, who testi-fied that he knew from experience that the Jackson County Prosecutor's Office did not run criminal background checks early in the case and that he anticipated getting the information closer to trial, the Jackson County Prosecutor's Office's standard response to this type of an inquiry is deceptive and does not comply with Rule 25.03. Thus, the Jackson County Prosecutor's Office should alter this language in its standard response to clearly reflect either that the criminal histories have not yet been run or that they have been run and revealed no prior convictions.

that he failed to plausibly demonstrate materiality of the information sought, and that his testimony at the hearing was not credible. Wallar appeals.

## Standard of Review

Our review of the denial of a Rule 24.035 motion " 'is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous.' " *Garris v. State*, 389 S.W.3d 648, 650 (Mo. banc 2012) (quoting *Cooper v. State*, 356 S.W.3d 148, 152 (Mo. banc 2011)). We will not deem the motion court's findings and conclusions clearly erroneous unless we are " 'left with the definite and firm impression that a mistake has been made.' " *Id.* (quoting *Cooper*, 356 S.W.3d at 152). The movant bears the burden of demonstrating clear error. *Id.* at 650–51.

## Analysis

Wallar raises two related points on appeal. First, he asserts that, due to a systemic failure of the Jackson County Prosecuting Attorney's Office to comply with its disclosure obligations under both Rule 25.03 and *Brady v. Maryland*, no guilty plea in Jackson County can be deemed knowing and voluntary, and Wallar's plea is but one example. In his second point, Wallar argues that the appropriate remedy—not for *his* allegedly involuntary and unknowing plea in particular, but for the allegedly pervasive sys-

tem-wide discovery failure perpetrated by the Jackson County Prosecutor's Office and condoned by the Jackson County Circuit Court—is discharge of Wallar for the purposes of deterring repeated intentional conduct. We reject both claims.

## A. Alleged disclosure violation claims can be cognizable in Rule 24.035 proceedings.

The first question we must address is whether Wallar's claim is even cognizable. Rule 24.035 provides the exclusive remedy for

claims that the conviction or sentence imposed violates the constitution and laws of this state or the constitution of the United States, including claims of ineffective assistance of trial and appellate counsel, that the court imposing the sentence was without jurisdiction to do so, or that the sentence imposed was in excess of the maximum sentence authorized by law....

Rule 24.035(a). Here, Wallar's claim is not one of ineffective assistance of either trial or appellate counsel. It is also not a challenge to the lower court's jurisdiction or the length of the sentence he received. Thus, to be cognizable, Wallar's claim must fall within the provision applicable to "claims that the conviction or sentence imposed violates the constitution and laws of this state or the constitution of the United States." [5] Wallar's disclosure violation

5. This Court recently held that "[w]hen a defendant admits he is guilty of a crime, 'he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea,' but instead, 'may only attack the voluntary and intelligent character of the guilty plea by showing' ineffectiveness of counsel." *State v. Vogt*, 304 S.W.3d 209, 212 (Mo.App. W.D.2010) (quoting *Goodwin v. State*, 502 S.W.2d 269, 272 (Mo.1973)). While this language suggests that the voluntary and intelligent nature of a plea may be challenged only

on a claim of ineffective assistance of counsel, such a reading is too narrow. *Vogt* addressed a motion to withdraw a guilty plea under Rule 29.07 based on an alleged Fourth Amendment violation, 304 S.W.3d at 209–10, and *Goodwin* addressed a post-conviction motion under Rule 27.26, the predecessor to Rules 29.15 and 24.035, alleging failure to suppress a coerced confession. 502 S.W.2d at 271. In both cases, the movants claimed ineffective assistance of plea counsel; thus,

claim invokes both Rule 25.03 and *Brady v. Maryland*.

█ Rule 25.03 provides for certain disclosures the State must make upon receipt of a written request from the defendant. The rule was promulgated pursuant to the Supreme Court's authority under article V, section 5, of the Missouri Constitution, which provides:

> The supreme court may establish rules relating to practice, procedure and pleading for all courts and administrative tribunals, *which shall have the force and effect of law.* The rules shall not change substantive rights, or *the law* relating to evidence, the oral examination of witnesses, juries, the right of trial by jury, or the right of appeal.... Any rule may be annulled or amended in whole or in part by a *law* limited to the purpose.

Mo. CONST. art. V, § 5 (emphasis added). The constitutional provision plainly contemplates a distinction between rules pro-mulgated by the Supreme Court and laws of this state. Thus, a technical violation of a Supreme Court Rule does not come within the ambit of Rule 24.035's application to violations of "laws of this state."[6] Consequently, for Wallar's claim to be cognizable, it must constitute an alleged violation of either the Missouri Constitution or the Constitution of the United States. As Wallar fails to identify any relevant portion of the Missouri Constitution under which his claim purportedly falls, we will examine whether it falls within any of the protections guaranteed by the United States Constitution.

█ In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court recognized that the violation of disclosure rules can have constitutional implications. Of course, the failure to raise a constitutional challenge at the earliest opportunity results in waiver of the claim.[7] *Ross v.*

---

neither *Vogt* nor *Goodwin* faced the issue we must resolve in this case.

Rule 24.035 expressly contemplates claims based on violations of the "constitution and laws of this state or the constitution of the United States." As discussed, *infra*, to be meritorious, such a claim would have to be one that the defense was unaware of prior to the plea, that could not have been raised before the plea, and that rendered the plea involuntary or unknowing. While such claims are undoubtedly rare, we are unwilling to conclude that such a claim could never be raised. An example of a constitutional claim that could be raised in a Rule 24.035 motion is a *Brady* claim. But, to be cognizable in a Rule 24.035 motion, the claimed nondisclosure must not only meet the requirements of *Brady*, including materiality, but also involve evidence the defense was not aware of that was of such significance that the defendant could credibly demonstrate that he would not have pled guilty, but would have insisted on going to trial, had he been aware of it. Such a claim is more likely to be successful if the defendant entered an *Alford* plea.

6. As discussed more fully *infra*, the violation of some Supreme Court Rules can have constitutional implications. For example, if a court failed to comply with Rule 24.02(e) by not obtaining a factual basis for a proffered guilty plea, the defendant's plea could be rendered involuntary and in violation of his constitutional right to due process. *See Evans v. State*, 350 S.W.3d 29, 33 (Mo.App. W.D.2011). When Rule 24.035 post-conviction relief is afforded for a violation of a Supreme Court Rule, it is not because the rule itself was violated, it is because the violation had constitutional significance. *See id.* (noting that " '[a]n appellate court's focus is on whether the defendant understood the nature of the charge against him and not on whether a particular ritual was followed or every detail was explained' " (quoting *Finley v. State*, 321 S.W.3d 368, 371 (Mo.App. W.D.2010))).

7. There appears to be only two exceptions to the general waiver rule: (1) double jeopardy claims where the error is apparent on the face of the record, *Feldhaus v. State*, 311 S.W.3d 802, 804–05 n. 2 (Mo. banc 2010); and (2) the change-of-law principle, where the state of

*State,* 335 S.W.3d 479, 481 (Mo. banc 2011). Therefore, before an alleged disclosure violation can be cognizable in a Rule 24.035 proceeding, it must both attain constitutional significance (i.e., meet the requirements of *Brady* ) and be of such a nature that it could not have been raised before the Rule 24.035 motion.

**B. Wallar's disclosure violation claim is not cognizable.**

Wallar argues that the State's failure to provide evidence in the form of prior convictions of the State's witnesses and the internal investigation records pertaining to Sergeant Boles and Officer Huwar constituted a disclosure violation that rendered his guilty pleas involuntary. But because Wallar's motion failed to plead a constitutional violation (or any other recognized ground for post-conviction relief), it is not cognizable in a Rule 24.035 proceeding.

 Under the *Brady* rule, "[a] prosecutor's failure to disclose exculpatory evidence to the defense denies a defendant a fair trial as guaranteed by the Due Process Clause of the Fifth Amendment, if the undisclosed evidence was material." *Scroggins v. State,* 859 S.W.2d 704, 707 (Mo.App. W.D.1993). The State's disclosure obligation includes both exculpatory and impeachment evidence. *Id.* We have held that the *Brady* standard of materiality lies somewhere between the newly-discovered evidence standard, in which a new trial is warranted only if the new evidence would have changed the outcome of the original trial, and the harmless error standard. *Buchli v. State,* 242 S.W.3d 449, 454 (Mo.App. W.D.2007).

> It appears to us … that the United States Supreme Court would have us ask whether … the "undisclosed evi-

the law changes before the case becomes final, *State v. Molsbee,* 316 S.W.3d 549, 553–54

dence would have been significant to the defendant in the way that he tried his case: Would it have provided him with plausible and persuasive evidence to support his theory of innocence or would it have enabled him to present a plausible, different theory of innocence? If either question can be answered affirmatively, the evidence is material under a *Brady* analysis."

*Id.* (quoting *State v. Parker,* 198 S.W.3d 178, 180 (Mo.App. W.D.2006)). The cases setting out this standard involve claims brought either under Rule 29.15 or on direct appeal and, thus, speak in terms of the effect of the disclosure on the *trial.* When raised in a Rule 24.035 motion, however, the alleged *Brady* violation must be such that it supports a conclusion that the movant would not have pled guilty had he been provided with the undisclosed evidence.

**1. Nondisclosure of mere impeachment evidence is insufficient to invalidate an otherwise voluntary plea.**

 Although "[t]he principles of *Brady* are applicable to the entry of a plea of guilty," *Scroggins,* 859 S.W.2d at 707, they are applicable only to the extent that the nondisclosed evidence is both exculpatory and material; a post-guilty-plea claim involving the nondisclosure of mere impeachment evidence (even if it might have been material in the context of a trial) is insufficient to invalidate an otherwise voluntary plea. *U.S. v. Ruiz,* 536 U.S. 622, 628–33, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (holding that the Constitution does not require the government to disclose impeachment evidence prior to entering a plea agreement with a criminal defendant).[8]

(Mo.App. W.D.2010). Neither of these exceptions is invoked or applicable in this case.

8. We recognize that, in *Lee v. State,* 573

Here, the prior conviction evidence Wallar identifies and claims that the State failed to disclose is, at best, mere impeachment evidence. "[I]mpeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware')." *Id.* at 629, 122 S.Ct. 2450. And while it is true that "the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be[,] ... the Constitution does not require the prosecutor to share all useful information with the defendant." *Id.* Waivers of constitutional rights are considered "knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *Id.* Thus, when a defendant enters a voluntary guilty plea and waives his right to a fair trial, he also waives those rights accompanying a fair trial, such as the right to impeach witnesses and challenge the State's evidence. Because "the Constitution does not require the Government to disclose impeachment evidence prior to entering a plea agreement with a criminal defendant," *id.* at 633, 122 S.Ct. 2450, Wallar has failed to identify a constitutional violation based upon the State's failure to disclose prior conviction information. *See* Rule 24.035(a). The claimed nondisclosure did not affect the voluntary and knowing nature of Wallar's plea.

As to the internal affairs material, Wallar failed to allege whether this evidence contained information that was impeaching, exculpatory, or both. Before the claim could be cognizable, however, Wallar had to plead, at a minimum, that the internal affairs material contained truly exculpatory evidence and not just impeachment material. *See Ruiz,* 536 U.S. at 632, 122 S.Ct. 2450. His failure to plead the contents of the allegedly nondisclosed evidence is fatal to his claim.

**2. Even if the internal affairs materials were exculpatory in nature, Wallar failed to prove he was entitled to post-conviction relief under Rule 24.035.**

In order to succeed on a Rule 24.035 claim, a movant must demonstrate that his plea was either involuntary or unknowing. If the claim is based on an alleged *Brady* violation, the movant must demonstrate that, had the evidence at issue been disclosed, he would not have pled guilty but, instead, would have insisted on going to trial.

In his briefing to this court, Wallar wholly failed to allege that, in the absence of the nondisclosure, he would not have pled guilty but would have insisted on going to trial. Rather, he makes the general allegation that a defendant "cannot make a knowing and voluntary decision on whether to plead guilty or go to trial when material [required to be disclosed] is systematically withheld by the Jackson County Prosecuting Attorney" (Point I) and that "the systemic violation of discovery rules by the Jackson County, Missouri Prosecuting Attorney is a fundamental violation of 'the constitution and laws of this state'" (Point II). In other words, Wallar

S.W.2d 131, 133–35 (Mo.App.1978), the court held that a post-conviction movant was entitled to relief for an alleged *Brady* violation, involving the nondisclosure of material impeachment information, raised for the first time post-guilty plea. To the extent the non-disclosed evidence at issue in *Lee* can be characterized as impeachment evidence, we believe that *Lee* is no longer good law in light of the United States Supreme Court's holding in *Ruiz.*

asks us to conclude that nondisclosure of any discoverable material prior to a plea automatically renders the subsequent plea involuntary and unknowing. He then asks that we employ the remedies provided by Rule 24.035 to create a sanction for alleged prosecutorial misconduct, regardless of whether the alleged misconduct resulted in prejudice to the defendant.

 We reject both requests because neither was raised below in the motion court [9] and accepting them would create a conflict with the standards for granting relief under both *Brady* and Rule 24.035. The standard advocated by Wallar fails to comply with the standard for granting relief based on a *Brady* claim generally insofar as it does not require that the nondisclosed evidence be material. His proposed standard also fails to comply with the standard for granting relief based on a Rule 24.035 motion in that it does not require a finding that he would not have pled guilty had the evidence at issue been disclosed. Rather, the standard Wallar advocates would entitle him to relief upon a showing of nothing more than a technical violation of Rule 25.03. There is no basis in the law to support Wallar's proposed standard.

 Although Wallar's briefing to this court failed to claim that he would not have pled guilty had the material at issue been disclosed, he did make this argument to the motion court. The motion court found, however, that Wallar's testimony, indicating that he would have proceeded to trial in the absence of the nondisclosure, was not credible. "We defer to the motion court's credibility determinations." *Neal v. State,* 379 S.W.3d 209, 217 (Mo.App. W.D.2012). Thus, even if he had raised

this claim on appeal, he would not be entitled to relief.

In short, Wallar has failed to identify a constitutional violation or any other recognized ground for post-conviction relief. *See* Rule 24.035(a). Thus, his claim is not cognizable in his Rule 24.035 proceedings. Consequently, the motion court committed no error in overruling Wallar's post-conviction motion. Because we find his claim not cognizable, we need not reach Wallar's second point regarding remedy for the alleged violation.

### Conclusion

The motion court committed no error in overruling Wallar's Rule 24.035 motion. Its judgment is affirmed.

THOMAS H. NEWTON, Presiding Judge, and MARK D. PFEIFFER, Judge, concur.

---

9. "'Claims not presented to the motion court cannot be raised for the first time on appeal.'" *Lilly v. State,* 374 S.W.3d 390, 394

(Mo.App. W.D.2012) (quoting *Brown v. State,* 925 S.W.2d 216, 218 (Mo.App. S.D.1996)).